THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KEITH GRIFFIN, | ) | |
| | ) | 22 C 4181 |
| Plaintiff, | ) | |
| | ) | Judge Kennelly |
| v. | ) | |
| | ) | Magistrate Weisman |
| CITY OF CHICAGO, a Municipal Corporation, and Chicago police officers DEMETRIUS PROTHRO, ARIEL WILLIAMS, and LAUREN HOLT, | ) ) ) ) ) | |
| Defendants. | ) | |

## CITY OF CHICAGO'S AMENDED ANSWER TO PLAINTIFF'S COMPLAINT

Defendants City of Chicago, by and through one of its attorneys, William Cook, Assistant Corporation Counsel, submit the following amended answer, affirmative defenses, and jury demand to Plaintiff's complaint.

### JURISDICTION AND VENUE

1. This action arises under the Constitution of the United States, particularly the Fourth and Fourteenth Amendments to the Constitution of the United States, under the laws of the United States, particularly the Civil Rights Act, Title 42 of the United States Code, §§ 1983 and 1988, and under the laws of the State of Illinois.

**ANSWER: Defendant City admits Plaintiff purports to bring this action pursuant to 42 U.S.C. § 1983 but deny Plaintiff was deprived of his state or federal rights.**

2. The jurisdiction of this Court is invoked under the provisions of Title 28 of the United States Code, §§ 1331 and 1343. Plaintiff also invokes the supplemental jurisdiction of this Court pursuant to Title 28 of the United States Code, Section 1367.

**ANSWER: Defendant City admits jurisdiction is proper but deny any allegations of wrongdoing or other misconduct.**

3. This Court has jurisdiction over this action pursuant to Title 28 of the United States Code §§ 1331 and 1367, as Plaintiff asserts claims under federal law and the state law claims arise out of the same facts as the federal claims. Venue is proper in the United States District Court for

the Northern District of Illinois under Title 28 of the United States Code, § 1391(b)(2), as the events complained of occurred within this district.

**ANSWER: Defendant City admits venue is proper in this district but deny any allegation of wrongdoing or other misconduct.**

## PARTIES

4. Plaintiff Keith Griffin (hereinafter "Keith") is, and at all times relevant, was a resident of Chicago, Cook County, Illinois, and a sworn correctional officer employed by the Illinois Department of Corrections.

**ANSWER: Defendant City lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph.**

5. Defendant City of Chicago is a government entity operating within the State of Illinois. City of Chicago is responsible for the actions of its employees while acting within the scope of their employment. At all times relevant to this action, the City of Chicago was the employer of Defendants Prothro, Williams, and Holt.

**ANSWER: Defendant City admits it is a government entity operating within the State of Illinois, and that at all times relevant to this action, the City of Chicago was the employer of Defendants Prothro, Williams, and Holt. Defendant City denies that remaining allegations contained in this paragraph.**

6. Defendants Prothro, Williams, and Holt are sued in their individual capacities and were at all times relevant, sworn police officers employed by Defendant City of Chicago, and were acting within the scope of their agency, service and/or employment with the City of Chicago, and were acting under color of the statutes, ordinances, regulations, customs, and usages of the State of Illinois.

**ANSWER: Defendant City admits the allegations contained in this paragraph.**

## FACTUAL ALLEGATIONS

7. On June 4, 2022, at approximately 1:10 p.m., Keith, who was employed as a correctional officer with the Illinois Department of Corrections, was driving to work at Stateville Correctional Center, driving southbound on Wentworth around 91st Street, in the city of Chicago, when he observed a blue unmarked squad car following him.

**ANSWER: Defendant City admits plaintiff was driving southbound on Wentworth Avenue on June 4, 2022 at approximately 1:10 p.m. Defendant City lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in this paragraph.**

2

8. The squad car, driven by Defendant Williams, followed Keith to 96th Street and Wentworth Avenue, where it activated its mars lights.

**ANSWER: Defendant City admits the allegations contained in this paragraph.**

9. Keith immediately pulled over.

**ANSWER: Defendant City admits Plaintiff pulled over, but denies the remaining allegations contained in this paragraph.**

10. Defendants Williams, Prothro, and Holt, exited their vehicle and approached Keith's car.

**ANSWER: Defendant City admits the allegations contained in this paragraph.**

11. Defendant Williams approached Keith from the driver's side, and Prothro and Holt approached from the passenger side.

**ANSWER: Defendant City denies that Holt approached the passenger side of Plaintiff's vehicle. Defendant City admits the remaining allegations contained in this paragraph.**

12. As Defendant Williams approached Keith's car, she ordered him to "raise all your windows down for me".

**ANSWER: Defendant City admits the allegations contained in this paragraph.**

13. Keith put his windows down.

**ANSWER: Defendant City admits the allegations contained in this paragraph.**

14. Defendant Williams notified Keith that she pulled him over because he was not wearing a seatbelt. Keith acknowledged he was not wearing a seatbelt.

**ANSWER: Defendant City admits the allegations contained in this paragraph.**

15. Defendant Williams requested Keith's driver's license and proof of insurance.

**ANSWER: Defendant City admits the allegations contained in this paragraph.**

16. While Keith went to retrieve his insurance card, Defendant Williams asked him if he had a Firearm Owners Identification ("FOID") Card and a Concealed Carry license ("CCL").

**ANSWER: Defendant City admits the allegations contained in this paragraph.**

17. Keith replied that he did have a FOID card.

3

**ANSWER: Defendant City admits the allegations contained in this paragraph.**

18. Defendant Williams asked Keith where his weapon was. Keith replied he did not have it with him.

**ANSWER: Defendant City admits the allegations contained in this paragraph.**

19. Defendant Williams asked Keith if there was any cannabis in the vehicle. Keith responded that there was no cannabis in the vehicle.

**ANSWER: Defendant City admits the allegations contained in this paragraph.**

20. Defendant Williams asked Keith where he was going. He told her he was going to work.

**ANSWER: Defendant City admits the allegations contained in this paragraph.**

21. Defendant Williams asked Keith where he worked. Keith informed her he worked at Stateville as a correctional officer.

**ANSWER: Defendant City admits the allegations contained in this paragraph.**

22. Defendant Williams asked Keith if he had an ID for his employment. He replied he did. "Can I have that too?", Defendant Williams asked.

**ANSWER: Defendant City admits the allegations contained in this paragraph.**

23. Keith gave her his IDOC identification, his driver's license and his FOID card.

**ANSWER: Defendant City admits the allegations contained in this paragraph.**

24. Defendant Williams ordered Keith to step out of the car.

**ANSWER: Defendant City admits the allegations contained in this paragraph.**

25. When Keith asked why he had to get out of the car, Williams responded, "For one, you're nervous, you're shaking…" "Because I'm on my way to work", said Keith.

**ANSWER: Defendant City admits the allegations contained in this paragraph.**

26. Keith gave Defendant Williams his insurance card.

**ANSWER: Defendant City admits the allegations in this paragraph.**

27. Defendant Williams asked Keith again if there was anything illegal in the car. Keith repeated that there was nothing illegal in the car.

**ANSWER: Defendant City admits the allegations contained in this paragraph.**

28. Defendant Williams opened Keith's driver's side door, and he got out of his car.

**ANSWER: Defendant City admits the allegations contained in this paragraph.**

29. Defendant Holt ordered Keith to face the car. Keith complied.

**ANSWER: Defendant City admits the allegations contained in this paragraph.**

30. The officers handcuffed Keith.

**ANSWER: Defendant City admits that Prothro handcuffed Plaintiff, but denies the remaining allegations contained in this paragraph.**

31. Defendant Prothro informed Keith, "You shakin', bro, like, my camera pickin' up everything, bro. You shakin', you shakin'".

**ANSWER: Defendant City denies that Defendant Prothro said dialogue referenced in Paragraph 31 while Plaintiff was briefly placed in handcuffs. Defendant City admits that, before Plaintiff exited his vehicle, Defendant Prothro stated to Plaintiff, "Bro, just, just step out real quick, bro. So listen, that's the third time we asked you. You shakin', bro, like, like, my camera pickin' up everything, bro. You shakin', you shakin'." To the extent Plaintiff makes additional allegations against the City in paragraph 31, Defendant City denies such allegations.**

32. As Prothro cuffed Keith, he began lecturing Keith. "You say you work for corrections, right?" he asked. "You understand all this, right? You deal with people all the time and how their body mannerisms, and all that. So we do this all the time also. You extremely nervous. You work at Illinois corrections? You should understand…we don't know you from a can of paint. You're shakin, like crazy. You have a medical condition?"

**ANSWER: Defendant City denies Defendant Prothro lectured Plaintiff. Defendant City admits that Defendant Prothro had the following conversation with Plaintiff:**

> **"You said you work for corrections, right? Now, you understand, you understand all this, right? So you work, deal with people all the time and how their body mannerism, and all that. Right?"**
>
> **Plaintiff responded, "mmhhmm."**
>
> **"So we do this all the time also. You extremely, nervous, bro. And if you work at Illinois correction, you should understand both of these: we don't know you from a can of paint."**

5

>**Plaintiff responded, "Exactly."**
>
>**"You shakin' like crazy. You have a medical condition?"**

**To the extent Plaintiff makes additional allegations against the City in paragraph 32, Defendant City denies such allegations.**

33. Keith denied that he was shaking, and asked, "Who wouldn't be nervous if they're getting pulled over…it's common sense to be nervous."

**ANSWER:** Defendant City denies Paragraph 33 contains a true and accurate description of the conversation between Defendant Prothro and Plaintiff, and responds that Defendant Prothro and Plaintiff had the following conversation:

>**Plaintiff states "I'm not shaking at all. I mean, who wouldn't be nervous if I just got pulled over."**
>
>**Defendant Prothro responds, "You, you just being pulled over, bro. But that's it."**
>
>**Plaintiff states "I mean it's just common sense to be nervous. I mean, you know, I'm going to be shaking just as they do when people come out of the jail nervous and they don't have anything."**

**To the extent Plaintiff makes additional allegations against the City in paragraph 33, Defendant City denies such allegations.**

34. "You suspended or something"? asked Prothro. "You gotta understand – I do this on the regular. Every day. We get weapons, drugs, every day, man. And I'm not sayin' you have anything in this vehicle, but the characteristics you exhibiting right now – it's either something wrong with your license, you got a medical condition, or it's some kind of contraband in this vehicle…You need to get checked out, bro. Cus my bodycam picked up shakin' the whole time. You fidgeting through paper. It's a clue to – something's goin on. In the vehicle. You're takin' deep breaths, you lack of eye contact…Bro, bro I do this. So I'm gonna ask you again, is there anything in this vehicle that we should be aware about. "Cus if we find something, you're taking all discretion out of our hands, bro. Is there anything in the vehicle?"

**ANSWER:** Defendant City denies that Paragraph 34 contains a true and accurate description of the conversation between Defendant Prothro and Plaintiff, and responds that Defendant Prothro and Plaintiff had the following conversation:

>**"You suspended or something?"**
>
>**[Plaintiff indicated in the negative.]**
>
>**"No? Okay, what's--I don't understand. I've been telling you, I do this on the regular. Every day. We get, we get weapons, drugs, every day, bro. And I'm**

6

**not saying you have anything in this vehicle. But the characteristics that you exhibiting right, it's either something wrong with your license, you got a medical condition, or some, some kind of contraband in this vehicle. So—"**

**Plaintiff responded, "You're right."**

**"So at the end of the day, if it's not me then all those bros then you need to get checked out, bro. Cause, my bodycam picked up you shaking the whole time. You fidgeting through paper, which is, is a clue to something's going on. In the vehicle. You taking deep breaths, you lack of eye contact. Bro, bro I do this. So I am going to ask you again, is there anything in this vehicle that we should be aware about? Because, if we find something, you're taking all discretion out our hand, bro. Is there anything in the vehicle?"**

**Plaintiff responded, "Mhm. No. Go—You all are going to start searching. Right? I'm on my way to work. I have to be at work at 3:00. You know I have to go all the way out to Crest Hill. You all--come on--you all are taking up my time. So.**

**I'll check it out real quick."**

**To the extent Plaintiff makes additional allegations against the City in paragraph 34, Defendant City denies such allegations.**

35. Prothro and Holt proceeded to search the interior of Keith's vehicle. They searched the front and back seats, under the seats, inside the center console, under the floor mats, in the trunk, inside the spare tire compartment, while Keith watched – calm, impassive, silent, and handcuffed.

**ANSWER:** Defendant City admits Plaintiff was handcuffed and silent during the search of his vehicle. Defendant City admits Holt conducted a search of the front and back seats of the driver's side of Plaintiff's vehicle, under the front driver side seat, and inside the center console. Answering further, Defendant City admits Prothro conducted a search of the front and back seats of the passenger side of Plaintiff's vehicle, under the front passenger side seat, inside the center console, under the rear driver's side floor mat, conducted a search of the driver's side back seat, searched in the rear hatch, and inside the tire compartment. Defendant City denies the remaining allegations contained in this paragraph.

36. The officers did not request Keith's consent to search his vehicle, and he did not give his consent.

**ANSWER: Defendant City lacks knowledge or information as to the truth or falsity of the allegations contained in this paragraph.**

37. After searching Keith's car and finding nothing illegal, Prothro informed Keith: "You gotta calm down, bro."

7

**ANSWER: Defendant City admits the allegations contained in this paragraph.**

38. Prothro told Keith, "At the end of the day, just look at your ISR receipt. It's going to document how you were acting on camera. It's gonna show how I explained everything thoroughly. Your behavior, medical problem, suspension, it's numerous things. I never accused you of having anything in this vehicle…So even if you're in the process of trying to be a CPD officer, it's gonna show that you were stopped at this moment, and the way that you conducted yourself."

**ANSWER: Defendant City denies the allegations contained in Paragraph 38, and states that Defendant Prothro and Plaintiff had the following conversation:**

**"So if you, if you, put this uniform on, because you're trying to put this uniform on. You understand—"**

**Plaintiff responded, "I really don't want to now at this point. [Inaudible] I don't want to work for you all."**

**"Okay. So, so, so at the end of the day—"**

**Plaintiff stated, "I'm good where I'm at."**

**"Look[inaudible]give you an ISR receipt. It's going to document everything, how you were acting on camera.**

**Plaintiff stated, "okay."**

**"It's going to show how I, I explained everything thoroughly. Your, your behavior, medical problem, suspension, it's numerous things. I never once accused you of having anything in this vehicle. I explained multiple different ways and was very professional with you. It's going to document, so even if you're in the process of trying to be a, a CPD officer, it's going to show that you were stopped at this moment, and the way that you conducted yourself.**

**Plaintiff responded, "Hmm. I mean, a little nervousness because I don't know the reason why I'm being stopped is totally okay. You didn't find anything, so I really don't care."**

**To the extent Plaintiff makes additional allegations against the City in paragraph 38, Defendant City denies such allegations.**

39. Holt asked Keith if he wanted a receipt for the traffic stop. "We're gonna document everything, in the stop, how you were acting, and everything."

**ANSWER: Defendant City admits the allegations contained in this paragraph.**

8

40. The officers' forcible detention of Keith constituted an investigatory stop under Chicago Police Department policy.

**ANSWER: Defendant City denies the allegations contained in this paragraph.**

41. Chicago Police Department Special Order S04-13-09 requires sworn officers who conduct an investigatory stop to complete an Investigatory Stop Report ("ISR").

**ANSWER: Defendant City admits that Special Order S04-13-09 generally requires sworn officers who conduct an investigatory stop to complete an Investigatory Stop Report ("ISR"), but denies that sworn officers are required to complete an ISR for every investigatory stop, and responds that there are circumstances where Special Order S04-13-09 does not require an ISR.**

42. An ISR is designed to ensure CPD officers document the facts and circumstances of investigatory stops, "including a statement of facts establishing Reasonable Articulable Suspicion to stop an individual".

**ANSWER: Defendant City admits the ISR documents the facts and circumstances of investigatory stops "including a statement of facts establishing Reasonable Articulable Suspicion to stop an individual." Defendant City states this is not the only purpose of an ISR, and therefore denies the remaining allegations contained in this paragraph.**

43. Supervisors will review officers' ISRs to determine if the stop was appropriate and within the law.

**ANSWER: Defendant City admits CPD supervisors will review officers' ISRs to determine if the stop was appropriate and within the law. Defendant City states this is not the only reason CPD supervisors review ISR's and therefore deny the remaining allegations contained in this paragraph.**

44. Despite conducting an investigatory stop of Keith, despite Defendant Holt's statement that "We're gonna document everything, in the stop, how you were acting, and everything", no Investigatory Stop Report was ever completed regarding this stop, in violation of CPD policy.

**ANSWER: Defendant City denies the allegations contained in this paragraph.**

45. Defendant officers never documented in any report the reason for the stop or for their detention of Keith.

**ANSWER: Defendant City denies the allegations contained in this paragraph.**

46. Defendant Prothro completed a Traffic Stop Summary, which is not an ISR, and does not include any facts used to justify an investigatory stop.

9

**ANSWER: Defendant City admits the allegations contained in this paragraph, but denies the remaining allegations contained in this paragraph.**

47. In the Traffic Stop Summary, Defendant Prothro falsely indicated there was no search of the vehicle or the driver.

**ANSWER: Defendant City admits that Defendant Prothro indicated there was no search of the vehicle or the driver. Defendant City lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in this paragraph.**

48. Keith was not arrested ticketed, or even given a warning, for failure to wear a seatbelt, or any other offense.

**ANSWER: Defendant City admits the allegations contained in this paragraph.**

49. At no time did the defendant officers have probable cause or reasonable suspicion to believe Keith had engaged in, was engaging in, or was going to engage in criminal activity.

**ANSWER: Defendant City denies the allegations contained in this paragraph.**

50. Throughout the stop, Keith was calm and measured. He was not visibly shaking. He had no medical condition, his license was not suspended, and there was nothing illegal in his vehicle.

**ANSWER: Defendant City denies the allegations contained in this paragraph.**

## COUNT I – FEDERAL CLAIM
## UNLAWFUL DETENTION
## DEFENDANTS PROTHRO, WILLIAMS, AND HOLT

51. Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER: Count I is not directed at Defendant City, and therefore Defendant City is not required to answer this paragraph. To the extent an answer by Defendant City is required, Defendant City adopts and incorporates its answers for the proceeding paragraphs as though fully restated and set forth herein.**

52. Defendants Prothro, Williams, and Holt detained Keith without probable cause or reasonable suspicion to believe he had committed, was committing, or was going to commit a crime, resulting in deprivation of his liberty, in violation of the Fourth Amendment to the United States Constitution.

**ANSWER: Count I is not directed at Defendant City, and therefore Defendant City is not required to answer this paragraph. To the extent an answer by Defendant City is required, Defendant City denies the allegations contained in this paragraph.**

10

53. As a proximate result of Defendants' misconduct, Keith suffered loss of liberty, fear, mental anguish, and emotional pain and suffering.

**ANSWER: Count I is not directed at Defendant City, and therefore Defendant City is not required to answer this paragraph. To the extent an answer by Defendant City is required, Defendant City denies the allegations contained in this paragraph.**

### COUNT II – FEDERAL CLAIM
### ILLEGAL SEARCH
### DEFENDANTS PROTHRO, WILLIAMS, AND HOLT

54. Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER: Count II is not directed at Defendant City, and therefore Defendant City is not required to answer this paragraph. To the extent an answer by Defendant City is required, Defendant City adopts and incorporates its answers for the proceeding paragraphs as though fully restated and set forth herein.**

55. Defendants Prothro, Williams, and Holt searched Keith's vehicle without legal process, probable cause or reasonable suspicion to believe Keith's vehicle contained evidence of a crime, in violation of the Fourth Amendment to the United States Constitution.

**ANSWER: Count II is not directed at Defendant City, and therefore Defendant City is not required to answer this paragraph. To the extent an answer by Defendant City is required, Defendant City denies the allegations contained in this paragraph.**

56. As a proximate result of Defendants' misconduct, Keith suffered humiliation, mental anguish, and emotional pain and suffering.

**ANSWER: Count II is not directed at Defendant City, and therefore Defendant City is not required to answer this paragraph. To the extent an answer by Defendant City is required, Defendant City denies the allegations contained in this paragraph.**

### COUNT III – STATE CLAIM
### WRONGFUL IMPRISONMENT
### CITY OF CHICAGO

57. Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER: Defendant City has filed a Motion to Dismiss this claim under ECF No 9, and therefore provides no answer to this allegation.**

58. Defendant City of Chicago, by and through its agents, Defendants Prothro, Williams, and Holt, caused Keith to be restrained, detained, seized, and/or imprisoned without having reasonable grounds to believe he had committed any crime or offense.

**ANSWER: Defendant City has filed a Motion to Dismiss this claim under ECF No 9, and therefore provides no answer to this allegation.**

59. As a proximate result of Defendants' misconduct, Keith suffered loss of liberty, fear, mental anguish, and emotional pain and suffering.

**ANSWER: Defendant City has filed a Motion to Dismiss this claim under ECF No 9, and therefore provides no answer to this allegation.**

### COUNT IV – STATE LAW CLAIM
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### CITY OF CHICAGO, PROTHRO

60. Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER: Defendant City adopts and incorporates its answers for the proceeding paragraphs as though fully restated and set forth herein.**

61. The conduct of Defendant Prothro, and Defendant City of Chicago, by and through its agent, Defendant Prothro, as set forth herein, was extreme and outrageous.

**ANSWER: Defendant City denies the allegations contained in this paragraph.**

62. Defendants intended to cause or recklessly or consciously disregarded the probability of causing severe emotional distress, and Keith suffered severe emotional distress as a proximate result of Defendants' actions.

**ANSWER: Defendant City denies the allegations contained in this paragraph.**

63. As a proximate result of Defendants' misconduct, Keith suffered severe anxiety, mental anguish, and emotional pain and suffering.

**ANSWER: Defendant City denies the allegations contained in this paragraph.**

### COUNT V – STATE LAW CLAIM
### INDEMNIFICATION
### CITY OF CHICAGO

64. Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER: Defendant City adopts and incorporates their answers for the proceeding paragraphs as though fully restated and set forth herein.**

65. At all relevant times, City of Chicago was the employer of Defendants Prothro, Williams, and Holt.

**ANSWER: Defendant City admits the allegations contained in this paragraph but denies any wrongdoing or misconduct.**

66. Defendants Prothro, Williams, and Holt committed the acts alleged above under color of law and in the scope of their employment as an employee of the City of Chicago.

**ANSWER: Defendant City admits the allegations contained in this paragraph but denies any allegation of wrongdoing or misconduct.**

67. Illinois law provides that government entities are directed to pay any tort judgment for any damages for which employees are liable within the scope of their employment activities.

**ANSWER: Defendant City denies this is a full and accurate statement of law and therefore denies the allegations contained in this paragraph.**

## AFFIRMATIVE DEFENSES

1. Defendant City is not liable to plaintiff if its employees or agents are not liable to the plaintiff (for neither state claims, 745 ILCS 10/2-109, nor for federal claims, *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1989)).

2. To the extent any employee or agent of Defendant City was acting within the scope of his or her employment, that employee or agent is not liable for his or her acts or omissions in the execution or enforcement of the law, unless such act or omission constitutes willful and wanton conduct. 745 ILCS 10/2-202.

3. Defendant City is not liable for any injury caused by the act or omission of a person that is not its employee. 745 ILCS 10/2-204, 2-109.

4. Defendant City is not required to pay punitive or exemplary damages in any action brought directly or indirectly against an employee by the injured party or a third party. 745 ILCS 10/2-213.

5. Defendant City is not liable for the decisions of its employees made in the exercise of discretion. 745 ILCS 10/2-201, 2-109.

6. To the extent Plaintiff failed to mitigate any of his claimed injuries or damages, any verdict or judgment obtained by Plaintiff must be reduced by application of the principle that a plaintiff has a duty to mitigate, commensurate with the degree of failure to mitigate attributed to Plaintiff by the jury in this case.

### JURY DEMAND

Defendant City requests a trial by jury.

BY: */s/ William Cook*
William Cook
Assistant Corporation Counsel

Caroline Fronczak, Deputy Corporation Counsel
William Cook, Assistant Corporation Counsel
City of Chicago, Department of Law
Federal Civil Rights Litigation Division
2 N. LaSalle St., Ste. 420
Chicago, Illinois 60602
(312) 742-2472 (Cook)
Atty. No. 90909
Caroline.Fronczak@cityofchicago.org
William.Cook@cityofchicago.org
***Counsel for Defendant City of Chicago***

THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KEITH GRIFFIN, | ) | |
| | ) | 22 C 4181 |
| Plaintiff, | ) | |
| | ) | Judge Kennelly |
| v. | ) | |
| | ) | Magistrate Weisman |
| CITY OF CHICAGO, a Municipal | ) | |
| Corporation, and Chicago police officers | ) | |
| DEMETRIUS PROTHRO, ARIEL | ) | |
| WILLIAMS, and LAUREN HOLT, | ) | |
| | ) | |
| Defendants. | ) | |

**NOTICE OF FILING AND CERTIFICATE OF SERVICE**

Jordan Marsh
Law Office of Jordan Marsh
5 Revere Drive Suite 200
Northbrook, IL 60062
(312) 401-5510
jordan@jmarshlaw.com

  **PLEASE TAKE NOTICE** that on this eighth day of November 2022, I have caused to be e-filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division **CITY OF CHICAGO'S AMENDED ANSWER TO PLAINTIFF KEITH GRIFFIN'S COMPLAINT**, a copy of which is herewith served upon you.

  I hereby certify that I have served this notice and the attached document by causing it to be delivered by electronic means to the person named above at the address shown on November 8, 2022.

              *S/William Cook*_____
              WILLIAM COOK
              Assistant Corporation Counsel